**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bertha Remato, | No. CV 09-2027-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Phoenix, et al., | |
| Defendants. | |

The court has before it defendants City of Phoenix and Officer Robert Sauceda's motion for summary judgment (doc. 69), plaintiff Bertha Remato's response (doc. 87) and defendant's reply (doc. 89). We also have defendants' motion for leave to exceed the page limit for their reply (doc. 91). This action arises from the death of plaintiff's son, Gonzalo Cordova, who was shot by Sauceda. Plaintiff brings the action individually and on behalf of the estate of Cordova. She asserts claims for (1) excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, (2) aggravated assault with a deadly weapon, (3) negligence, and (4) negligent supervision and/or training.

**I**

Defendants move for leave to exceed the page limit for their reply (doc. 91). Defendants' proposed reply is two pages over the eleven page limit established by LRCiv 7.2(e). As the requested extension is modest, we grant defendants' motion (doc. 91).

**II**

We take undisputed facts as true and consider disputed facts in the light most favorable to plaintiff. Anthoine v. North Central Counties Consortium, 605 F.3d 740, 745 (9th Cir. 2010). On December 19, 2008, seventeen-year-old Carlos Cordova and three of his friends drove to a Circle K convenience store located at 5850 West Indian School Road, Phoenix, for a "beer run," i.e. to shoplift beer. Plaintiff's Statement of Fact, ("PSOF") ¶ 67 (doc. 86). Cordova drove his mother's Chevrolet Cavalier. When they arrived at the Circle K, Cordova backed the car into a parking space on the north side of the store, so that the rear of the car was closest to the store and the front of the car faced west. Cordova waited in the car while his three friends went into the store. Id., ¶ 69.

Sauceda and Officer Warren Tittlemier observed Cordova's friends leaving the store as they drove by in a marked Chevrolet Tahoe patrol vehicle, and recognized that a "beer run" was in progress. The officers pulled into the lot and parked in front of Cordova's vehicle, so that the police vehicle faced northeast. Id., ¶ 72. Two of Cordova's friends entered the Cavalier, while according to defendants, the third ran eastward. Defendants' Statement of Fact, ("DSOF") ¶ 11 (doc. 70). Defendants allege Officer Tittlemier chased the fleeing suspect on foot. Sauceda then noticed Cordova in the driver's seat of the Cavalier. Cordova then attempted to leave the parking lot. Sauceda testified that when Cordova accelerated, he feared the Cavalier was going to hit him. He says he tried to run behind the police vehicle to safety, but did not have time.

According to defendant's expert, Sauceda was between 8.7 and 11.1 feet in front of the vehicle and one foot to its left immediately before Cordova's acceleration of the car. DSOF ¶ 46. Sauceda testified that when the vehicle was three to four feet from him, he drew his gun and fired twice toward the driver as the car was coming towards him. According to the parties' experts, Sauceda was no more than one foot away from the Cavalier when he fired the two shots. DSOF, ¶ 50. The incident was recorded in a phone call that Circle K employee Eliana Rodriguez made to a police non-emergency number to report the beer run. DSOF, ¶ 36–37.

Sauceda testified that he shot at the windshield, but in fact both bullets entered the driver's side window. The first shot hit the "A pillar," between the windshield and the driver's window, before entering the driver's window and penetrating Cordova's arm. The second bullet, which ultimately killed Cordova, struck the "B pillar," which separates the driver's side window from the driver's side back window, and then hit Cordova's back near his left shoulder. According to a diagram prepared by defendants' expert, Sauceda was next to the vehicle, not in front of it, when he fired the two shots. See PSOF, ex. 8, "Plan View of a Back-Extrapolated Azimuth Components of the 2 Shots" (doc. 86-3). Plaintiff maintains that Cordova was past Sauceda when Sauceda fired both shots. PSOF, ¶ 90. Defendants allege that Sauceda was either in front of the car or to the side of the front bumper when he fired at Cordova. DSOF, ¶ 64.

Cordova drove out of the parking lot, but several blocks later lost control and crashed. He was transported to a hospital, where he was pronounced dead. The cause of death was the second gunshot wound. See DSOF, ex. 10, "Report of Autopsy" at 7 (doc. 74-6).

The City of Phoenix investigated and determined that Sauceda's actions were in compliance with the Phoenix Police Department's use of force policy.

**II**

Defendants argue that plaintiff's claim for excessive/improper use of force in violation of the Fourth Amendment fails as a matter of law because Sauceda's actions were objectively reasonable. The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989). We consider the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Our analysis turns on the threat Cordova posed to Sauceda. The crime at issue, stealing beer and beef jerky, is minor, and by starting to drive away, Cordova was attempting

to evade arrest. "The threat posed is the most significant Graham factor." Brooks v. City of Seattle, 599 F.3d 1018, 1028 (9th Cir. 2010). In considering the threat, we must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97, 109 S.Ct. at 1872. "[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Brosseau v. Haugen, 543 U.S. 194, 197–98, 125 S.Ct. 596, 598 (2004) (citing Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701 (1985)). Therefore, if Sauceda had probable cause to believe that Cordova posed a threat of serious physical harm, then his use of force was not constitutionally unreasonable.

Defendants contend that Sauceda attempted to retreat, and feared for his life as the car "accelerated towards him." Motion at 9. Defendants note that 1.5 seconds elapsed from the time Cordova accelerated the vehicle until the time the shots were fired, and that because the vehicle was moving so fast, the bullets entered the driver's side window. Id. at 10. According to defendants, the split-second decision making, the close proximity of Sauceda to the vehicle, and the rapid discharge of the shots demonstrate that Sauceda had probable cause to believe that Cordova posed a threat of serious physical harm. Defendants contend that when Sauceda made the decision to fire, he was in front of the Cavalier, and had only a third of a second to react to the threat posed by the vehicle, which was moving at fourteen miles per hour. They argue this explains why the bullets entered the driver's door, rather than the windshield.

Plaintiff argues that Sauceda never should have put himself in danger of being run over, and that the evidence shows Sauceda was not in immediate danger when he fired the two shots. Plaintiff argues that Sauceda disregarded the Phoenix Police Department's standards for the use of deadly force. First, Sauceda did not comply with the rule prohibiting officers from putting themselves "in the path of a moving vehicle or one capable of immediate movement." DSOF, ex. 11, "Use of Force Policy" at 13 (doc. 74-7). Second, the

- 4 -

use of force policy permits shooting at moving vehicles only when the officer has probable cause to believe the subject poses an immediate danger of death or injury to the officer or others. Id. Plaintiff argues that Sauceda shot at the driver after the car no longer posed such a threat. Third, plaintiff argues that the second shot was unreasonable because the car had clearly started to pass Sauceda. Plaintiff also cites the Arizona Peace Officer Standards, which advise that "[s]topping a vehicle as a threat using a firearm is impossible," and that the safest approach is to not be in the vehicle's path and to move safely away to avoid being hit. PSOF, ex. 10, "AZ POST" at 18–19.

Plaintiff also asserts that contrary to Sauceda's testimony that he shot at the windshield, he shot at the driver's side while standing perpendicular to the vehicle. Plaintiff relies on a diagram prepared by defendants' expert witness, which shows that both bullets came from a position beside the driver's side, rather than in front of the car. PSOF, ¶ 92. In addition, plaintiff's police practices expert opines that Cordova "was indisputably driving past and not at" Sauceda when the shots were fired. PSOF, ex. 8, "Report of Plaintiff's Police Practices Expert," ¶ 11 (doc. 86-4). Plaintiff also argues that Sauceda's decision to shoot at the car twice further underscores the unreasonableness of the use of force. Plaintiff argues that even if his first shot was reasonable, the danger had undeniably passed when he fired the second shot. Plaintiffs notes that Sauceda testified that the car was three to four feet away, a distance from which cars regularly pass pedestrians. Response at 9. Based on this evidence, plaintiff argues it is more likely that Sauceda shot at Cordova because he was fleeing the crime scene, not because Sauceda was afraid of being run over. Such a purpose alone cannot justify the use of deadly force. Garner, 471 U.S. at 11, 105 S.Ct. at 1701 ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.").

We cannot conclude that Sauceda's use of deadly force was reasonable as matter of law. "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases

should be granted sparingly. This is because such cases almost always turn on a jury's credibility determinations." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (citations omitted). Clearly, the situation in which Sauceda found himself was "tense, uncertain, and rapidly evolving." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010) (finding use of deadly force reasonable after driver had failed to yield to police commands and vehicle was accelerating). It is also undisputed that a vehicle can be a deadly weapon. U.S. v. Anchrum, 594 F.3d 1162, 1164 (9th Cir. 2010). In addition, even if Sauceda violated departmental policies on moving vehicles, his use of deadly force is not necessarily unconstitutional. See Whren v. U.S., 517 U.S. 806, 815, 116 S.Ct. 1769, 1775 (1996) ("[P]olice enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable.").

However, there remain disputed issues of material facts. Sauceda's use of deadly force would not have been "objectively reasonable" if a fact finder determines that he did not have probable cause to believe that Cordova posed a threat of serious physical harm to him or anyone else. If a fact finder decides that Cordova was attempting to escape the scene without hurting Sauceda, and that Sauceda shot at the vehicle when he was not in its path, Sauceda would not have had probable cause to believe he was in harm's way. Accordingly, his use of force would not have been justified. This comes down to a credibility determination. A fact finder could determine that Sauceda was not in reasonable apprehension of serious harm when he used deadly force against Cordova. We therefore cannot grant summary judgment on plaintiff's Fourth Amendment excessive force claim.

**III**

Defendants argue that even if Sauceda violated Cordova's Fourth Amendment rights, he is entitled to qualified immunity because he believed the amount of force used was appropriate. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan,

555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009). The test for qualified immunity entails two steps. We consider whether the facts shown make out a violation of a constitutional right, id., 555 U.S. at 231, 129 S.Ct. at 815–16, and, if so, whether the law was "clearly established at the time of defendant's alleged misconduct." Id. "Qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information" he possessed. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1443 (9th Cir. 1991).

Sauceda is not entitled to qualified immunity as a matter of law. The same issue of fact that precludes summary judgment on plaintiff's excessive force claim prevents a finding of qualified immunity: whether Sauceda was in reasonable apprehension of harm when he fired the two shots at Cordova. In relation to a claim of qualified immunity for a Fourth Amendment violation, "the determination of what conduct underlies the alleged violation-what the officer and claimant did or failed to do-is a determination of fact." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). If, as plaintiff contends, there was no reasonable basis for Sauceda to believe he was in harm's way, his conduct would support a claim for excessive force and would violate clearly established law. A reasonable officer in Sauceda's position could not have believed his conduct was lawful if Cordova was attempting to flee without jeopardizing Sauceda's safety. See Garner, 471 U.S. at 11, 105 S.Ct. at 1701 (use of deadly force violates suspect's Fourth Amendment rights if officer does not have probable cause that suspect presents threat of harm to officer or others). If a fact finder accepts plaintiff's version of events, the unlawfulness of Sauceda's use of force would have been apparent "in the light of pre-existing law." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002); see also Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 763 (2d Cir. 2003) ("But this question——whether it was reasonable for [defendant Officer] Breen to believe that his life or person was in danger——is the very question upon which we have found there are genuine issues of material fact.").

**IV**

Plaintiff asserts claims for assault, negligence, and negligent supervision and/or

training under Arizona law. Defendants argue that these claims fail as a matter of law because Sauceda's use of force was justified, and therefore defendants cannot be liable. See A.R.S. § 13-413 (no civil liability for justified conduct). Under Arizona law, the use of deadly force by a police officer is justified when the officer reasonably believes that it is necessary to "defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force." A.R.S. § 13-410(C). The use of deadly force may be reasonable even if the officer was negligent in creating the situation that put him in danger, and his negligence proximately caused the injury. Garcia v. U.S., 826 F.2d 806, 810 (9th Cir. 1987).

The state law claims raise the same issue of fact as plaintiff's Fourth Amendment claim: the reasonableness of Sauceda's belief that deadly force was necessary to defend himself from the use of deadly force. As we explained, a fact finder may determine that based on all the evidence of the shooting, Sauceda could not have reasonably believed he needed to defend himself against the imminent use of deadly physical force when he shot Cordova. Therefore, A.R.S. § 13-410 does not entitle defendants to summary judgment on the state law claims.

In addition, a finding of unreasonable use of force could support a determination that Sauceda acted with intent to cause harmful contact, an element of assault. See Restatement (Second) of Torts § 21 (1965). It could also demonstrate a breach of the standard of care, necessary for plaintiff's negligence claim. See Gipson v. Kasey, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). Accordingly, we deny summary judgment as to plaintiff's claims for assault and negligence.

**V**

Defendants argue that plaintiff's claim for negligent supervision fails because there is no evidence that poor training caused the shooting or that better training would have averted the incident, and thus no evidence that Sauceda was negligently supervised. See Restatement (Second) of Agency § 213, "Principal Negligent Or Reckless." Plaintiff does not address the negligent supervision claim. We agree that there is no evidence in the record

- 8 -

that Sauceda was negligently supervised. We therefore grant summary judgment for defendants on plaintiff's claim for negligent supervision.

**VI**

The parties agree that the Estate of Gonzalo Cordova cannot be a party plaintiff to the state law claims because Cordova has survivors. See A.R.S. § 12-612(A) (estate can only be party in wrongful death action if there are no survivors). We therefore dismiss the Estate of Gonzalo Cordova as plaintiff to the state law claims.

Defendants also argue that the estate cannot bring a Section 1983 claim on behalf of the decedent. The "survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action. The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 369 (9th Cir. 1998) (citations omitted). Plaintiff argues that the estate can recover damages for pain and suffering under Section 1983, which are not recoverable under state law, but cites no state law authorizing her Fourth Amendment survival claims. See Response at 17.

The issue is unsettled. See Badia v. City of Casa Grande, 195 Ariz. 349, 356, 988 P.2d 134, 141 (Ct. App. 1999) ("We need not and, therefore, do not decide whether § 14-3110 would preclude damages in a § 1983 action for a decedent's pain and suffering if the victim were to die as a result of a constitutional violation."). Arizona's survival statute bars recovery of a decedent's pain and suffering. See A.R.S. § 14-3110. "A clear majority of federal cases, however, has concluded that when a violation of federal civil rights results in death of the victim, state statutes limiting the remedies of the victim's estate and family members are not consistent with the purposes of section 1983." Gotbaum v. City of Phoenix, 617 F. Supp. 2d 878, 884 (D. Ariz. 2008) (collecting cases). We agree that the "application of the Arizona survival statute and its elimination of pain and suffering damages in cases where death is alleged would be contrary to the purposes of section 1983." Id. at 885. We

therefore deny defendant's motion to dismiss the estate's Section 1983 claim.

## VII

Defendants argue that plaintiff cannot obtain punitive damages. Plaintiff may not be awarded punitive damages against a municipality or its employee acting in his official capacity. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981); Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). Plaintiff may only obtain punitive damages from Sauceda in his individual capacity if his "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). Plaintiff does not respond to defendants' argument that the record lacks evidence of the requisite intent. While a question of fact remains as to the reasonableness of Sauceda's use of force, we conclude that there is no evidence of evil intent or reckless indifference to Cordova's rights. We therefore dismiss plaintiff's claim for punitive damages.

## VIII

**IT IS ORDERED GRANTING** defendants' motion to exceed the page limit for their reply (doc. 91).

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion for summary judgment (doc. 69).

**IT IS ORDERED DISMISSING** the Estate of Gonzalo Cordova as plaintiff to the state law claims. **IT IS ORDERED GRANTING** summary judgment for defendants on plaintiff's claim for negligent supervision and plaintiff's claim for punitive damages.

**IT IS ORDERED DENYING** the motion for summary judgment as to all other claims.

DATED this 19th day of August, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge